COMMONWEALTH *vs.* ROLANDO DE LOS SANTOS.

No. 93-P-1698.

Essex. May 13, 1994. - October 24, 1994.

Present: DREBEN, KASS, & FINE, JJ.

*Evidence*, Consciousness of guilt. *Practice, Criminal*, Instructions to jury.
*Homicide. Malice. Intent. Wilful, Wanton, or Reckless Conduct.*

At a criminal trial, the judge did not abuse his discretion in giving instructions to the jury, over the defendant's objection, on consciousness of guilt [528-529], and there was no error in the judge's refusal to give supplemental instructions on the issue as requested by the defendant [530].

At the trial of an indictment for second degree murder the judge incorrectly precluded the jury from considering certain facts from which the jury might have concluded that the defendant was guilty of only involuntary manslaughter; a new trial was required. [530-532]

INDICTMENT found and returned in the Superior Court Department on June 3, 1992.

The case was tried before *John L. Murphy, Jr.*, J.

*Nona Walker*, Committee for Public Counsel Services, for the defendant.

*Susanne Levsen*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The defendant was the caretaker of his three year old son and his eight week old daughter at the time of his daughter's death. The thrust of his appeal from his conviction of the second degree murder of his daughter is his claim of error in the judge's instructions — error both in the judge's treatment of consciousness of guilt and in a supplemental instruction on manslaughter. While we consider any defect or omission in the instructions on consciousness of guilt harmless, we are constrained to reverse because the judge's supplemental manslaughter charge contained im-

proper comments on the evidence which may have prejudiced the defendant.

According to the medical examiner, the child died from asphyxia due to suffocation. He based his findings on the presence of trauma in the region of her airways — a torn frenulum, (the bridge between the gum and the lip). He opined that such an injury would have been caused by "blunt trauma or with a glancing or sideswiping motion with traction, significant traction to it." He stated that such an injury may also occur "with an object being placed in the mouth." There was a very small bruise at the tip of the lip and some facial abrasion on the cheek. The child also had old blunt force traumatic injuries which the examiner considered contributed to her death.[1] Neither the medical examiner nor a specialist in radiology, see note 1, *supra*, considered a fall as an adequate explanation for the child's death as there was no trauma to the head other than the injuries described.

The defendant's account or accounts were brought out by prosecution witnesses. The first was given by a paramedic who was called to the house. Acknowledging that she speaks very little Spanish, she testified that the defendant spoke to her in broken English with a few simple Spanish words. She asked him what had happened. "And he said, baby in tub. And then he made motion as if to wash himself and turn around, and baby slip under water. And he kept saying, slip under water."

To the admitting person at Salem Hospital, the defendant stated that the baby had soiled her diaper, that he was washing her at the sink in the bathroom, putting some soap on her, when she slipped out of his hands to the floor. He told a police interpreter who speaks Spanish that the baby had spit up and had messed its diaper. He had picked the baby up to

---

[1] The medical examiner found evidence of rib fractures and requested a skeletal survey by a specialist in pediatric radiology. The latter found multiple fractures in the ribs and the extremities in various stages of healing ranging from a few days to three or four weeks. The judge, at the request of the defendant, instructed the jury that they could not draw any inference of guilt from them, although the instruction was somewhat confusing. No question is raised with respect to the instruction.

clean it in the bathroom, and in that process she jumped out of his hand, out of his arm, and landed on the floor. He then picked up the baby and noticed that the baby was bleeding at the mouth, was hurt and was not breathing. He put her in her crib and tapped her to try to revive her. When he was unsuccessful, he ran out of his apartment and pulled the fire alarm. The paramedics came and took the baby to Salem Hospital.

The defendant called several witnesses to the stand who testified that the baby's three year old brother, the victim of lead poisoning, was uncontrollable and pulled at the baby. The defense argued that the death was an accident, that the baby fell and stopped breathing and that the defendant tried to revive her. The other fractures, the defense claimed, were caused by the baby's uncontrollable three year old brother.

1. *Consciousness of guilt instructions.* Prior to closing argument, the defendant requested that the judge not give a *Toney* charge (*Commonwealth* v. *Toney,* 385 Mass. 575, 584-586 & nn.4-6 [1982]), but the judge indicated to counsel, out of the presence of the jury, that it should be given because the defendant gave two different versions of what happened, and both were at variance with the evidence from the medical people. He stated that counsel could argue that the paramedic did not understand what the defendant was trying to say to her.

The judge gave the following instruction:

> "There's some evidence in this case of statements made by the defendant. If you find that the defendant made false statements as to facts that were material in this case, you may consider that evidence as showing a consciousness of guilt; however, you may not convict the defendant on the basis of the evidence before you on the consciousness of guilt alone. You may, but need not, consider such evidence as a factor in tending to prove the guilt of the defendant.

> "I believe that there was testimony about statements made outside the premises in the ambulance and the

other statements made at the hospital before nurses and police officers and so forth."

There was no mention of the different accounts by the prosecutor in his closing argument. Defense counsel, on the other hand, pointed out the defendant's emotional state and broken English to explain the variations. As indicated in *Commonwealth* v. *Cruz*, 416 Mass. 27, 33 (1993), a judge has discretion to give a *Toney* charge over the defendant's objection. There was no abuse of discretion.

The defendant makes several arguments concerning the instructions. First he argues that there was no factual basis for the judge to conclude that there were inconsistent statements. Our quotation from the paramedic's testimony belies that claim.

The defendant next contends that the instruction was flawed because it placed the statements the defendant allegedly made in opposition to the "facts" stated by the experts, and thus was an invasion of the fact-finding function of the jury. The argument is without merit as the instruction permitted the jury both to find the facts and to determine whether the statement was false. Moreover, immediately before the challenged instruction, the judge told the jury that it was up to them to weigh the evidence of the experts.[2]

The defendant's additional claim, based on *Commonwealth* v. *Trefethen*, 157 Mass. 180, 199 (1892), that the instruction allowed the jury to find consciousness of guilt in what amounted to the defendant's denial of his guilt, is also without merit. The court in *Trefethen* distinguished between knowingly false statements regarding facts relevant to the issue and a general denial of guilt. The former are admissible while a general denial of guilt is not of itself evidence of a false statement. The judge's instructions were consistent with *Trefethen*.

---

[2]The judge instructed: "Whether an expert or not, you may accept the testimony, you may reject part of the testimony, you may reject all of the testimony. That's true of any witness. It's up to you to make the determination of what the facts are."

The more difficult question is the refusal to give the supplemental *Toney* instructions, 385 Mass. at 585 & n.6, which the defendant requested after the judge gave his charge. While the judge should have given the requested supplement, and although we have reversed convictions for failure to give the supplemental instructions, see, e.g., *Commonwealth* v. *Estrada*, 25 Mass. App. Ct. 907, 908 (1987), unlike that case and other cases relied on by the defendant, we are satisfied that here "consciousness-of-guilt evidence played little or no part in the jury's thinking." *Ibid.* The jury just did not believe the defendant's version of accident.

2. *Manslaughter instruction.* The prosecutor in both opening and closing argument emphasized the third prong of malice. In his opening, he said:

> "[W]e will show that this defendant intended an act that would cause a plain likelihood that an infant the size of [baby] De Los Santos and the age of [baby] De Los Santos would suffer serious bodily injury or death."

Again in closing, he said:

> "The definition I expect you'll hear from his Honor of malice, malice which is necessary for you to find the defendant guilty of murder in the second degree: An act which creates the strong and plain likelihood of grievous bodily harm or death. I suggest the government has proven those facts that support the charge of murder in the second degree."

Although the judge did not think there was evidence of wilful and wanton conduct,[3] and the defendant indicated at

---

[3]Prior to his original charge, counsel had, at a bench conference, suggested to the judge that holding an eight week old baby over a sink in one arm while splashing water on her could have been viewed by the jury as constituting wanton and reckless conduct. The judge stated that he had done that "a million times, and a two month old baby will fit right in here in the palm of anybody's hand . . . but certainly that's not reckless and wanton conduct." At best, he thought putting down the child who was not breathing in the crib on its stomach might be found to be such conduct.

the charge conference that he would not argue involuntary manslaughter, both the prosecutor and the defendant considered such a charge advisable. The judge made no reference to the facts in his initial charge on involuntary manslaughter. During deliberations, the jury asked the court to redefine involuntary manslaughter and malice aforethought. The judge then reinstructed the jury, first on the three prongs of malice, and then on involuntary manslaughter. After discussing "wanton" and "reckless" conduct, he added the following comment:

> "Now, let me say something. I'll tell you to focus in on what did or did not occur in the bathroom. If someone drops a baby by negligence, that's not a crime unless there's evidence of the things that I told you about, reckless and wanton conduct. And I'll tell you, here, there is no such evidence. I probably shouldn't be saying that to you. But there is no such evidence. So it brings it down to the matter of putting the baby in the crib. And the evidence was that the father put the baby in the crib, on her stomach; and that is the only evidence before you on that. So direct you right down to the issue, that's what we're talking about; and that's a decision that you have to make."

The defendant immediately objected. While counsel had focused on accident during the trial, he never conceded that involuntary manslaughter was inapplicable. See *Commonwealth* v. *Chotain*, 31 Mass. App. Ct. 336, 341 (1991).

The judge should not have made the quoted comments. It is apparent that the jury relied on the medical evidence in reaching their verdict. However, there was very little indication as to where the actions causing the infant's death had occurred other than the defendant's own account; his testimony referred to actions both in the crib and the bathroom.

In *Commonwealth* v. *Sires*, 413 Mass. 292, 302-304 & n.14 (1992), the court pointed out that the "difference between the elements of the third prong of malice and wanton and reckless conduct amounting to involuntary manslaughter

lies in the degree of risk of physical harm that a reasonable person would recognize was created by the particular conduct, based on what the defendant knew." No distinction has been made "between the third prong of malice and involuntary manslaughter based on the extent of the defendant's knowledge of the facts that created the objectively ascertainable risk," *ibid.*, or on whether the defendant's conduct is characterized as "intentional," the usual term applied to the third prong of malice, *Commonwealth* v. *Delaney*, 418 Mass. 658, 666 (1994), or "wilful and wanton," the description used with respect to involuntary manslaughter.[4] The jury's question indicates that they wanted further clarification as to the difference between the two offenses. Based on the defendant's testimony, they could have thought that the events had occurred in the bathroom. By improperly precluding them from considering what occurred there for purposes of manslaughter, the jury, not believing that an accident had happened, may have been influenced by the judge's comments to conclude that only second degree murder was possible if the death occurred in the bathroom. Cf. *Commonwealth* v. *Sneed*, 376 Mass. 867, 870 (1978).

Accordingly, the judgment must be reversed, and the verdict set aside.

*So ordered.*

.

---

[4] As stated in *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944), "the essence of wanton or reckless conduct is *intentional* conduct . . . which . . . involves a high degree of likelihood that substantial harm will result to another" (emphasis supplied). "Wanton or reckless conduct is the legal equivalent of intentional conduct." *Id.* at 401.