## Commonwealth vs. Raul Robles, Jr.

Hampden. March 4, 1996. - June 25, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

*Search and Seizure,* Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Evidence,* Prior misconduct, Verbal completeness, Of criminal proceedings, Consciousness of guilt. *Practice, Criminal,* Instructions to jury, Capital case. *Jury and Jurors.*

An affidavit in support of an application for a search warrant failed to establish probable cause for the seizure of a certain article of clothing worn by the defendant at his arrest where the affidavit did not connect the clothing with any criminal activity [65-66]; however, where the arresting officer observed bloodstains on the sleeve of the coat in question and the defendant stated that he was wearing the same hat and sneakers he wore on the night of the murder, police had probable cause to seize the coat incident to the arrest [66-68].

At the trial of a murder indictment the judge properly denied the defendant's motions for mistrial based on the admission of allegedly improper evidence of the defendant's prior bad acts where the judge determined that the evidence established a connection between the defendant and the victim and that its probative value outweighed any prejudice to the defendant. [68-69]

At the trial of a murder indictment on a theory of joint venture, the judge correctly declined to instruct that the defendant was not the shooter and correctly refused to allow in evidence incomplete admissions of the codefendant out of their context or the record of the codefendant's conviction; moreover there was no merit to the defendant's contention that the Commonwealth was estopped from allowing the jury to conclude that the defendant was the shooter where the Commonwealth did not proceed on that theory. [69-70]

At a murder trial the judge appropriately instructed the jury that they could infer consciousness of guilt on the part of the defendant if they found beyond a reasonable doubt that the defendant had made false statements to the police, where the statements the defendant had made to the police were material and other evidence tended to prove the falsity of the statements. [70-72]

There was no error or substantial likelihood of a miscarriage of justice in a judge's allowance of the Commonwealth's motion to correct the record on appeal of a murder trial to reflect oral affirmation of the verdict by all twelve jurors where, on the uncontradicted basis of affidavits submitted by parties present when the jury returned its verdict, the judge concluded that the record should be corrected. [72-74]

INDICTMENTS found and returned in the Superior Court Department on March 8, 1991.

The cases were tried before *John F. Murphy, Jr., J.*

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Elizabeth Dunphy Farris,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Raul Robles, Jr., was convicted, after a jury trial, of murder in the first degree, armed robbery, and unlawful carrying of a firearm. He appeals.[1] We conclude that the convictions should be affirmed. We decline to exercise our extraordinary power under G. L. c. 278, § 33E (1994 ed.), to order a new trial, or enter a verdict of a lesser degree of guilt on the conviction of murder in the first degree.

The facts may be briefly summarized as follows: In the early morning hours of February 10, 1991, Daniel Larson was found shot to death in "the Flats" section of Holyoke. Clutched in Larson's hand was his wallet. It contained no money. Testimony revealed that Larson had left his fiancée's house in South Hadley at 12:25 A.M. on the morning of February 10, 1991, with five or six dollars in his wallet. Further testimony revealed that Larson was in the habit of going to the Flats to purchase marihuana. Nelson Vasquez, Larson's alleged supplier recited, over the defendant's objection, that he and the defendant had sold marihuana together in the Flats.

An autopsy of Larson's body revealed the cause of death as two gunshot wounds, one to the neck and one to the right chest. Both wounds were inflicted at close range by bullets from a .38 caliber revolver. The weapon that fired the fatal shots was later recovered from the apartment of the defendant's sister, Marisela Robles.[2] The weapon was linked to the defendant through the testimony of a witness, Raymond Le-Blanc. LeBlanc said that he had seen the defendant near the

---

[1]The defendant also has appealed from the trial judge's allowance of the Commonwealth's motion to correct the record on appeal. That appeal has been consolidated with the defendant's direct appeal and is discussed *infra,* part 5.

[2]Alleged joint venturer Reynaldo Lorenzi, Robles' half-brother, also resided at the apartment where the gun was recovered.

scene of the murder, two weeks earlier, carrying a weapon that looked like the murder weapon.[3]

Another witness, Jose Garcia, said that he had seen the defendant at approximately 9:30 P.M. on the night of the murder in the vicinity of the murder scene and that the defendant volunteered that he was looking for someone to rob.

Both LeBlanc and Garcia stated that when they saw the defendant he was wearing a blue, three-quarter length coat. A third witness, Maria Maldonado, said that the defendant was wearing the blue coat in the early morning hours of February 10, 1991, immediately after the murder.[4] Marisela Robles, the defendant's sister, said that the defendant owned the blue coat but that he was not wearing it on the night of the murder.[5] The defendant stated that he was wearing a brown or brown-like coat on the night of the murder.[6] No such coat was recovered by the police.

The defendant was arrested at 1:05 P.M. on February 10, 1991. He was wearing a blue, three-quarter length coat. Captain Page of the Holyoke police department stated that at the time of the defendant's arrest, he observed blood stains on the blue coat. He then obtained a search warrant and sent the coat to the State crime laboratory for analysis. At trial, State crime laboratory forensic chemists opined that the stains on the blue coat were human blood and that the blood was consistent with having come from Daniel Larson and could not have come from Raul Robles.

The defendant; his half-brother, Reynaldo Lorenzi; and Edward Mora were indicted for the murder of Daniel Larson,

---

[3]The murder weapon was a rare United States Navy issue revolver from 1902-1903.

[4]Maldonado further testified that the defendant and two other men arrived at an "after hours" party held at her apartment at approximately 2:15 A.M. on February 10, 1991. She overheard them discussing a "young college kid that was shot twice on the flats." Maldonado testified that she overheard the defendant admit that they shot Larson and took his money over a "bag of weed." Maldonado's testimony at trial at times varied with her statements previously given to the police.

[5]Marisela previously had stated to the police that the defendant was wearing the coat that night.

[6]The transcript of the defendant's statement was translated from Spanish. It is unclear whether the defendant stated that the coat was brown, tan, or khaki.

for armed robbery and for unlawful carrying of a firearm.[7] The Commonwealth alleged that the defendant and Lorenzi participated in a joint venture to rob Daniel Larson and that the defendant was guilty of murder in the first degree by virtue of felony-murder.

1. *Seizure of blue coat.* The defendant moved to suppress the blue coat seized at the time of his arrest and the chemical analysis of its stains, arguing that the affidavit in support of the search warrant did not establish probable cause to seize the coat.[8] His motion was denied orally on January 8, 1992 (two days after the hearing). A written memorandum of findings and ruling was filed on April 29, 1992. The judge concluded, in his written findings, that the affidavit established probable cause because it sufficiently tied the defendant to the gun used in the murder and it was reasonable, given the circumstances of the murder, for the magistrate to infer that clothing worn by the perpetrator could contain evidence. The judge rejected the defendant's argument that there was insufficient evidence, given the defendant's statement that he was wearing a brown jacket that night, to connect the blue coat with the murder. The defendant contends that this was error. We agree. Although the judge correctly found that the affidavit sufficiently connected the defendant and, by inference, the clothing he wore the night of the crime, with the crime, the affidavit failed to establish probable cause that the defendant was wearing the blue coat on that night.

To justify seizure of the defendant's personal belongings, the police must establish that the items sought to be seized are connected to criminal activity and that they are in the lo-

---

[7]Prior to the defendant's trial, Lorenzi was convicted by a jury of murder in the first degree by reason of deliberate premeditation. The charges against Mora were nol prossed.

[8]The defendant alternatively argued that the warrant, even if valid, did not authorize chemical analysis of the coat. He alleged that the chemical analysis was warrantless and not covered by any exception to the search warrant requirement. This argument was rejected by the judge and is not pressed on appeal. It is without merit. See *Commonwealth* v. *Varney*, 391 Mass. 34, 38-39 (1984) (court explicitly refuses to hold that police must obtain a warrant before lawfully obtained evidence can be subject to scientific testing).

cation sought to be searched.[9] See *Commonwealth* v. *Upton*, 394 Mass. 363, 370-371 (1985), quoting *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983); *Commonwealth* v. *Cefalo*, 381 Mass. 319 (1980). Probable cause to believe that the coat contained evidence of the murder must be established on the face of the affidavit supporting the search warrant. See *Commonwealth* v. *Monosson*, 351 Mass. 327, 330 (1966) (judge may not give consideration to testimony presented to magistrate if facts, information, and circumstances contained in affidavit were inadequate to show probable cause); *Commonwealth* v. *Sheppard*, 394 Mass. 381, 388 (1985); *Commonwealth* v. *Gonzalez*, 39 Mass. App. Ct. 472, 473 n.1 (1995). The affidavit before the magistrate requested and described the clothing the defendant was wearing at the time of his arrest. It did not state a belief that the clothing contained evidence of the crime or state probable cause for such a belief. The warrant was, therefore, invalid.

However, if the search warrant is invalid, a search still may be justified as a warrantless search if it fits into one of the exceptions to the search warrant requirement. *Upton*, *supra* at 368. The Commonwealth has argued, both to the motion judge below and to this court, that the seizure was valid incident to the defendant's arrest. See G. L. c. 276, § 1 (1994 ed.) ("A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment . . ."); *Chimel* v. *California*, 395 U.S. 752, 762-763 (1969) (reasonable for arresting officer to search for and seize evidence on arrestee's person at time of arrest); *Commonwealth* v. *Blackburn*, 354 Mass. 200 (1968). To seize the coat incident to the arrest, the police must have had probable cause to believe that the coat was connected to the crime. See *Commonwealth* v. *Marsh*, 354 Mass. 713, 720 (1968) (clothing worn by defendant at time of arrest properly seized; appeared relevant and admissible).

Ordinarily, we would remand for a hearing to determine whether the police had probable cause to seize the coat incident to the defendant's arrest. However, in the unique circumstances of this case, where the Commonwealth attempted

[9]As the coat was present at the police station at the time of seizure, the second requirement is not at issue.

to present testimony and argument at the motion hearing in support of its contention that the police had probable cause to seize the coat incident to arrest and where such testimony was elicited at trial and subject to cross-examination by the defendant, we conclude that remand is unnecessary.

At trial, Captain Page stated that, at the time of the defendant's arrest, he noticed blood stains on the sleeve of the coat. He said that this provided him with probable cause to seize the coat. Captain Page's testimony was corroborated by the testimony of two forensic chemists. State crime laboratory chemist Paul J. Zambella testified that fairly large stains on the right sleeve area of the blue coat were visible to the naked eye. He further testified to his initial impression, before testing, that the stain material in fact was blood. State crime laboratory chemist Karolyn LeClaire further corroborated Captain Page's testimony with her observation that the larger stain on the sleeve of the blue coat was approximately the size of an orange and was consistent in appearance with blood. Both chemists were subject to cross-examination by the defendant. The size and appearance of the blood stains on the coat are not in dispute, even after cross-examination at trial by the defendant.

Additionally, the defendant's statement at arrest that he was wearing the same hat and sneakers he wore on the night of the murder gave the police probable cause to believe that the defendant had not disposed of the clothing worn on the night of the murder. We conclude that, on the basis of this undisputed evidence, the police had probable cause to believe that the defendant was wearing the blue coat at the time of the murder and that the coat could contain evidence. Seizure of the coat incident to arrest was proper. See *United States* v. *Edwards*, 415 U.S. 800 (1974) (police may seize clothing worn at time of arrest when it becomes apparent that it may contain evidence); *Commonwealth* v. *Williams*, 422 Mass. 111 (1996) (proper to seize as evidence clothing and shoes worn by defendant at time of arrest); *Commonwealth* v. *Wright*, 411 Mass. 678, 687 (1992) (when police have probable cause to arrest defendant, can take sneakers worn at time of arrest); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 299, cert. denied, 493 U.S. 940 (1989); *Commonwealth* v. *Gliniewicz*, 398 Mass. 744, 749-750 (1986) (proper for officer to seize as evidence boots worn at time of arrest once officer noticed bloodstains

and that boot's tread appeared similar to tread at scene of crime); *Commonwealth* v. *Dickerson*, 372 Mass. 783, 792 (1977) ("seizure of the clothing, while warrantless, was incident to a valid arrest and was 'evidence of the crime for which the arrest . . . [had] been made' "). The defendant's motion to suppress was properly denied.

2. *Prior bad act evidence.* Attempting to elicit a connection between the defendant and the victim, the prosecutor questioned Nelson Vasquez, an admitted drug dealer, as to whether the defendant "had any connection to [Vasquez] with respect to selling [marihuana]." The defendant objected and moved for a mistrial. The judge allowed the evidence in on the basis of the prosecutor's representation that the witness would testify that Robles was present on numerous occasions when the witness sold marihuana to the victim.[10] When the witness did not testify to this effect the defendant renewed his motion for a mistrial. The judge allowed the evidence to stand on the basis that, as the victim was a constant buyer and the defendant a seller of marihuana on Center Street in Holyoke, the evidence established a connection between the two. We accept the judge's determination that the probative value of the evidence outweighed its prejudice unless there is palpable error. *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981). "Relevant evidence is not rendered inadmissible merely because it indicates that the defendant may have committed an offense other than that for which he is being tried." *Id.* at 462. That a connection may have been established without reference to drug dealing through testimony that the defendant frequented that section of Holyoke does not render admission of this evidence erroneous. "It was well for the jury to have a view of the entire relationship between the defendant and . . . victim[ ]." *Id.* at 463. See *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763-764 (1992) (evidence of prior restraining order admissible to enable prosecutor to present full picture of incident so that crime charged did not appear to jury as an essentially inexplicable act of violence); *Commonwealth* v. *Robertson*, 408 Mass. 747, 750-751 (1990) (evidence that defendant was victims' pimp and had previously severely beaten both victims admissible to

---

[10]Based on the witness's voir dire testimony, the prosecutor had a good faith basis for believing Vasquez would testify that the defendant had been present as often as ten times when Vasquez sold marihuana to the victim.

show relationship). There was no error in the admission of this evidence. Any prejudice to the defendant was outweighed by the probative value of this evidence.

3. *Refusal to instruct jury that defendant was not the shooter.* The defendant argues that his due process rights under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights were violated by the judge's refusal to instruct the jury that the defendant was not the shooter. At trial, the defendant argued that he was entitled, at the least, to inform the jury that Reynaldo Lorenzi admitted at a separate trial that he fired the fatal shots.[11] The defendant requested that Lorenzi's admission or the record of his conviction be admitted but objected to admission of other statements made by Lorenzi in which he denied involvement in the shooting or implicated the defendant. The judge denied the defendant's request and neither Lorenzi's admission nor the record of his conviction was admitted in evidence. We conclude that the judge acted properly in refusing to allow portions of hearsay statements made by Lorenzi to be admitted in evidence. Without clarification of Lorenzi's statements, there existed a danger that the jury would believe that Lorenzi had pleaded guilty and had not implicated the defendant. It was not error to refuse to allow Lorenzi's admission or record of conviction in evidence since the defendant objected to the admission of additional evidence which would clarify the context of the admission. See *Commonwealth* v. *Watson*, 377 Mass. 814, 828 (1979) (completeness requires that when a statement, declaration, or admission by a person is made the subject of proof, all that was said by him at the same time and upon the same subject is admissible). See also *Commonwealth* v. *Tilley*, 327 Mass. 540, 548 (1951) ("it has been the established law of this Commonwealth that in a criminal case the record of conviction or acquittal in another case to which the defendant was not a party is not admissible to establish the truth of any fact involved in such conviction or acquittal").

---

[11]Lorenzi's alleged statements were not admitted at trial because Lorenzi exercised his Fifth Amendment right not to incriminate himself and did not testify at Robles' trial. Defense counsel, however, represented that, in his own trial, Lorenzi took the stand and admitted to shooting Larson. Lorenzi apparently claimed that the shooting was accidental. Lorenzi died before his appeal could be heard by this court.

The defendant's contention that the Commonwealth is judicially estopped from allowing the jury to conclude that the defendant was the shooter is similarly without merit. The jury in the Lorenzi case was charged on both joint venture liability and principal liability and the verdict did not specify on which theory the jury convicted. It cannot be said that it was conclusively established in that trial that Lorenzi was the shooter. It would not, therefore, have been inconsistent for the Commonwealth to proceed, if it so desired, against the defendant on the theory that the defendant was the shooter. See *Nichols* v. *Scott*, 69 F.3d 1255, 1272 (5th Cir. 1995), cert. denied sub nom. *Nichols* v. *Johnson*, 116 S. Ct. 2559 (1996) (where verdict in first trial did not presuppose determination that codefendant fired fatal shot, government not precluded from arguing that defendant fired fatal shot). The Commonwealth chose to proceed against the defendant solely on a joint venture theory of guilt. The prosecutor never argued that the defendant was the shooter or that he should be convicted on that basis. There was no error.

4. *Jury instruction on consciousness of guilt.* The defendant claims error in the judge's decision, over the defendant's repeated objection, to charge the jury on consciousness of guilt. We conclude that in the circumstances of this case it was proper for the judge to give an instruction on consciousness of guilt.[12] At the time of his arrest, the defendant gave a statement to the police in which he denied knowledge of the gun and the murder, stated that he was at home at the time of the murder, and described that he was wearing a brown or khaki jacket on the night of the murder.[13] At trial, the Commonwealth produced evidence that the defendant had been seen with the murder weapon two weeks prior to the murder, that the weapon was recovered at the defendant's sister's apartment, that the defendant was seen wearing a blue coat

---

[12]At trial, the defendant did not object to the substance of the instruction given. The charge properly instructed the jury that consciousness of guilt alone is insufficient evidence of guilt, that they must find beyond a reasonable doubt that the defendant lied to the police before considering his statements as consciousness of guilt, and that the jury are not required to infer guilt from evidence that the defendant lied to the police. See *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982).

[13]The defendant's tape-recorded statement was played for the jury and a transcript and two-page typewritten summary signed by the defendant were introduced in evidence.

both immediately before and immediately after the murder, and that the coat was covered in the victim's blood. Further evidence suggested that the defendant had been told of the murder prior to his arrest. If the jury believed the Commonwealth's evidence, they could intimate that the defendant's statements to the police were false and deliberately made to mislead the police. False statements to police may be considered as consciousness of guilt if there is other evidence tending to prove the falsity of the statements. See *Commonwealth* v. *Merola*, 405 Mass. 529, 547 (1989) (purported discrepancies between true facts, as the jury found them, and statements made by the defendant and others, were further evidence that the jury could properly consider); *Commonwealth* v. *Eppich*, 342 Mass. 487, 492 (1961) ("False statements, especially when coupled with other evidence tending to incriminate him, could be considered as showing a consciousness of guilt on the part of the defendant of the crime with which he is charged"); *Commonwealth* v. *Mitchell*, 20 Mass. App. Ct. 902 (1985) (defendant's statement to the police that he was at a party at the time of the alleged break-in, when taken in conjunction with evidence that the defendant's coat was covered in construction dust found near the scene of the crime, could be considered as evidence of consciousness of guilt); *Commonwealth* v. *Geisler*, 14 Mass. App. Ct. 268, 274 (1982) ("[H]ad the jury found, from all the evidence . . . that the defendant fabricated the statement regarding his whereabouts in order to mislead the police, they could have considered that statement as evidence manifesting consciousness of guilt"). See also *Commonwealth* v. *Carrion*, 407 Mass. 263, 276 (1990) ("False statements made to the police are a standard example of admissible evidence on consciousness of guilt"). Because evidence of the defendant's whereabouts on the night of the murder, whether he was wearing the bloodied blue coat that night, and whether he had access to the murder weapon were material to the question of the defendant's guilt, an instruction that the jury could infer consciousness of guilt from the defendant's affirmative misstatements about these material particulars was appropriate. See *Commonwealth* v. *Bonomi*, 335 Mass. 327, 348 (1957) ("The activities of the defendant on the day the murder was alleged to have been committed were material to the issue of his guilt. If, in describing them, it were found that he

made wilfully false statements in material particulars to the investigating authorities, consciousness of guilt could be inferred").[14] There was no error.

5. *Jury affirmation of guilty verdict.* On appeal, the defendant contends that his conviction should be reversed because the jurors failed orally to affirm the guilty verdict in open court.[15] As support, the defendant cites to the portion of the original trial transcript after the forelady of the jury affirmed the verdict. The transcript reads as follows: "So say you all, ladies and gentlemen of the jury. You may be seated." The defendant contends that "[t]he colloquy was strikingly irregular because it consisted solely of exchanges between the clerk and the foreperson."[16]

After the defendant's appeal was filed, the Commonwealth moved to correct the record on appeal so that it properly reflected oral affirmation of the verdict by all twelve jurors. See Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979). The Commonwealth's motion was allowed. As corrected, the transcript reflects an affirmative response of all jurors to the question, "So say you all, Ladies and Gentlemen of the Jury?" Because we conclude that there was no error in the judge's allowance of the Commonwealth's motion to correct the record on appeal, we reject the defendant's claim.

On motion by one of the parties or its own motion, a trial judge may correct a trial record to conform to the truth. Mass. R. A. P. 8 (e) ("If any difference arises as to whether

---

[14]On appeal, the defendant contends, in reliance on *Commonwealth* v. *Trefethen*, 157 Mass. 180, 199 (1892), that the instruction impermissibly permitted the jury to infer the defendant's guilt from his general denial. Consistent with *Trefethen*, the instruction permitted the jury to infer consciousness of guilt from the statement which contained deliberate misstatements about material particulars, not merely general denials of guilt. See *supra*, note 12. See also *Commonwealth* v. *De Los Santos*, 37 Mass. App. Ct. 526, 529 (1994).

[15]The defendant did not object below to the alleged lack of affirmation of the verdict in open court. We, therefore, consider the issue pursuant to G. L. c. 278, § 33E (1994 ed.), to determine whether there exists a "substantial likelihood of a miscarriage of justice." See *Commonwealth* v. *Rosa*, 422 Mass. 18, 30 (1996) (where trial counsel did not object at trial, we look only for a substantial likelihood of a miscarriage of justice).

[16]The defendant concedes that, despite this striking irregularity and an immediate sidebar conversation between the judge and defense counsel about polling the jury, "defense counsel did not manifest an awareness that the required ritual had not been observed."

the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the lower court, either before or after the record is transmitted to the appellate court, or the appellate court, or a single justice, on proper suggestion or on its own motion, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to a single justice"). See *Bechtel* v. *Paul Clark, Inc.*, 10 Mass. App. Ct. 685, 693 (1980). The trial judge's correction is essentially conclusive. *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 598 (1982). See also *Bechtel, supra* (noting that under analogous Federal rule a judge's decision is virtually unreviewable).

The judge who heard the Commonwealth's motion to correct the record on appeal was the same judge who presided at the trial. In deciding the motion, the judge had before him the affidavits of the district attorney who prosecuted the case and the assistant district attorney who sat as second chair. Both prosecutors attested to specific recollections of the jury's affirmance of the verdict. The judge also had before him affidavits of the courtroom clerk and the two defense attorneys. All three stated that they had no specific recollection of the verdict colloquy. The clerk added that although she had no specific memory of the verdict colloquy in this case, her usual practice was not to proceed, once the jury were asked to affirm the verdict, until an audible response was forthcoming. The usual practice of an experienced courtroom clerk is relevant to the inquiry of the correctness of the transcript.[17] Cf. *Commonwealth* v. *Quinones*, 414 Mass. 423, 432 (1993) (no impropriety in relying on judge's customary practice in taking guilty pleas to reconstruct the record particularly when judge is experienced senior trial judge with almost twenty

---

[17]The defendant argues that the judge below erred in relying solely on the clerk's usual practice to determine the correctness of the transcript. This argument ignores the affidavits of the district attorney and assistant district attorney, the absence of objection by defense counsel, and the failure of any party in the courtroom to notice the "striking irregularity" of the procedure as the defendant alleges it transpired.

years experience in the Superior Court). We have particularly
noted the appropriateness of relying on custom where the
pattern of questioning follows a well-prescribed course, the
questioner follows the process many times in the course of a
year, and the defendant produces no evidence to the contrary.
*Id.* at 434. That is the case here. The clerk attested in her af-
fidavit that she has assisted in approximately 800 criminal tri-
als and that she utilizes the same procedure each time jurors
return a verdict. She described, in detail, her practice of ask-
ing the jurors collectively for public affirmation of their
verdicts and not continuing until an audible response was
forthcoming. The defendant was unable to produce any evi-
dence other than the contested transcript to support his ver-
sion. Neither the official court reporter nor the defendant's
trial attorneys had a specific recollection of the proceeding.[18]
This is in contrast with the evidence presented by the Com-
monwealth in support of its motion to correct, namely the
district attorney and assistant district attorney's specific recol-
lection of public affirmation, the failure of an experienced
judge, defense counsel and assistant, district attorney and as-
sistant district attorney, and courtroom clerk to notice any ir-
regularity, the absence of any objection by the defendant, and
the courtroom clerk's affidavit as to her usual practice. On
the basis of the above, we cannot conclude that the trial
judge's allowance of the Commonwealth's motion to correct
the transcript to conform to the truth created a substantial
likelihood of a miscarriage of justice. See *Nighelli, supra* at
598 (defendant's failure to object "supports the probability
that no error was in fact made"). The Commonwealth's mo-
tion was properly allowed.

6. *Relief under G. L. c. 278, § 33E.* We have considered
the entire case on the law and the evidence, see G. L. c. 278,
§ 33E, and we conclude that the interests of justice do not
require entry of a lesser degree of guilt or a new trial on the
conviction of murder in the first degree.[19]

*Judgments affirmed.*

---

[18]The official court reporter's affidavit merely reasserted that "[t]he jury
verdict portion of the Robles transcript is a true and accurate copy of my
stenographic notes, a verbatim record of what I heard that day . . . ."

[19]The defendant makes no separate arguments concerning his convictions
for armed robbery and unlawful carrying of a firearm. We therefore do not
discuss those convictions separately. Those convictions are affirmed.