COMMONWEALTH *vs.* PERNELL HARRIS.

No. 98-P-299.

Hampden. May 7, 1999. - July 30, 1999.

Present: PERRETTA, DREBEN, & SPINA, JJ.

*Search and Seizure,* Automobile, Probable cause, Exigent circumstances, Expectation of privacy. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Evidence,* Declaration against interest, Criminal profile, Expert opinion. *Controlled Substances. Practice, Criminal,* Instructions to jury, Deliberation of jury, Assistance of counsel.

Evidence at a hearing on a motion to suppress evidence amply supported the judge's conclusion that exigent circumstances supported police officers' warrantless search on probable cause of the trunk of an automobile parked on private property, where police had witnessed the defendant's openly transacted drug sales from the trunk of the car, and where the neighborhood was in a commotion from the officers' having chased an observed buyer. [484-488]

At the trial of an indictment alleging trafficking in cocaine, error, if any, in the judge's exclusion of a statement against penal interest of the coventurer ("the cocaine is mine") was harmless, where there was more than sufficient evidence of the defendant's participation in the drug venture, regardless of any other's claim of ownership of the cocaine. [488]

A police officer's expert opinion, a description of the use of beepers in the distribution of narcotics, did not constitute improper criminal profile testimony. [488-489]

There was no merit to a criminal defendant's claim on appeal that the evidence at trial that he was either a principal or a joint venturer in trafficking in cocaine was insufficient to submit to the jury. [489]

Nothing in the circumstances of the record of jury deliberations demonstrated that the judge's giving a *Tuey-Rodriquez* charge was premature or coercive. [489-490]

INDICTMENT found and returned in the Superior Court Department on June 2, 1994.

A pretrial motion to suppress evidence was heard by *Mary-Lou Rup,* J., and the case was tried before her.

*Michael O. Shea* for the defendant.

*Karen J. Bell*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. A Superior Court jury found the defendant guilty of an indictment charging him with trafficking in cocaine having a net weight of twenty-eight to one hundred grams. See G. L. c. 94C, § 32E(*b*). He raises several issues on appeal, his principal claim being that the Superior Court judge was in error in concluding that the circumstances of the seizure of evidence from the trunk of an automobile parked on private property were sufficiently exigent as to justify the police in proceeding without a warrant. We affirm the conviction.

1. *The evidence.* We relate the evidence presented by the Commonwealth at the hearing on the defendant's motion to suppress evidence seized from an automobile without a warrant on May 2, 1994,[1] and at a voir dire regarding the defendant's motion to suppress evidence seized from his person on the same date.[2] Officer Timothy Kenney of the Springfield police department testified at the hearing on the defendant's motion that about two weeks prior to May 2, 1994, the police department received information that narcotics transactions were being conducted in the area of 26 Mapledell Street. On the evening of May 2, Kenney spoke with a confidential informant who had given him reliable information over the past eight months which led to arrests and convictions on narcotics and weapon charges. The informant told Kenney that two African-American men, in their twenties, were selling cocaine in front of 26 Mapledell Street. The first man, named Pernell (defendant), was that day wearing a black leather jacket over a red hooded sweatshirt, black nylon pants, and a ballcap. The second man, Abdullah,[3] was dressed in a blue flannel shirt and baggy jeans and wore his hair in braids.

As further related by the informant, the men were selling crack cocaine from the trunk of a Cadillac parked in the driveway of 26 Mapledell Street. The cocaine and a small scale

---

[1]The evidence presented at trial was essentially the same.

[2]The defendant makes no cognizable argument on appeal that the evidence seized from his person (cash and a beeper) should have been suppressed. The issue is therefore waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[3]Later identified as Abdullah Abdul-Hakim.

were contained in a small gift bag.[4]

Based upon this information, Kenney set up a surveillance point in a parking lot across from 26 Mapledell Street (premises). Four other officers were in the near area for support. Aided by binoculars, Kenney saw the two men, all as described by the informant, standing in front of the premises, "just hanging around in front of number 26." There were two vehicles parked in the driveway immediately adjacent to the house. A brown Cadillac was parked farthest in from the street. The car in front of it, a Buick, protruded out to the sidewalk and blocked the Cadillac from the street. As Kenney watched, he saw a third man approach Abdullah Hakim and the defendant. After a brief conversation, the three men walked over between the two cars parked in the driveway. Hakim reached into his shirt pocket, took out a set of keys, and opened the trunk of the Cadillac. The defendant reached into the trunk and removed a small bag, which he placed on the hood of the Buick. Hakim took a scale and another item out of the bag, placed that item on the scale, and then handed it to the third man. This man handed Hakim what appeared to be currency and then started to walk down Mapledell Street while Hakim returned the scale to the bag and the bag to the trunk.

Kenney relayed his observations over his police radio to the other officers, at least one of whom gave chase to the third man, the buyer. As the buyer was being chased, Kenney could hear a "lot of commotion" and people yelling "police" coming from the neighboring area. Apprehensive that the noise would alert Hakim and the defendant to their presence, the officers abandoned the chase of the buyer and all converged upon the driveway. As Kenney was doing so, he saw Hakim and the defendant get into the Cadillac. As he got closer, he could see that the two men were smoking. Kenney opened the driver's door. The two men were seated inside and the "entire passenger compartment was full of smoke." The police removed Hakim and the defendant from the vehicle and recovered a burning marijuana cigarette that had been thrown to the floor of the passenger compartment.

The officers brought the two men to the rear of the Cadillac, removed the keys from the pocket of Hakim's shirt, and opened

---

[4]The informant told Kenney that this information was based upon the fact that he or she (the informant) had been at 26 Mapledell Street prior to speaking with him and saw the men make a drug sale.

the trunk. Kenney reached into the trunk and "recovered" a small bag. The bag contained a small scale and a large amount of crack cocaine. The officers also took the registration documentation from the car. Those documents disclosed that the Cadillac was registered to Hakim. Kenney did not notice any distinguishing features about the car nor did he notice whether it had a license plate. A beeper and $318 were removed from the defendant's person as a result of a search conducted incident to his arrest.

Hakim testified at the suppression hearing that on May 2, 1994, he was residing with his parents at 26 Mapledell Street. He was the owner of the Cadillac. The car had a flat tire and a "blown" engine, and had neither license plates nor a registration sticker. He stated that the car was not mobile on May 2, 1994, and had not been moved since that date. Hakim further testified that, sometime subsequent to his arrest, his parents broke the lock to the trunk and removed his possessions.[5]

2. *The denial of the motion to suppress.* At the conclusion of the suppression hearing, the trial judge found that, based upon the information from the confidential informant and Kenney's observations, there was probable cause to arrest Hakim and the defendant as well as to search the trunk of the Cadillac, and that the commotion caused in the neighborhood by the pursuit of the buyer gave rise to an exigent situation. She concluded that, in the circumstances presented, the law did not require that one of the officers remain at 26 Mapledell Street to stand guard over the Cadillac while a search warrant was sought. There is ample evidence to support the trial judge's findings of fact, and we, therefore, grant substantial deference to her conclusions of law. See *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985).

It is the defendant's argument that the police had sufficient time to obtain a warrant, "particularly given the defunct condition of the automobile." The defendant weaves into this claim a vague assertion that the police lacked probable cause to arrest him and to search the trunk of the Cadillac.[6]

Because there is ample evidence to support the trial judge's

---

[5]Hakim was again arrested on July 27, 1994. At the time of the suppression hearing, he was incarcerated at M.C.I. Gardner on sentences imposed on the crimes leading to these two arrests. He declined to testify at trial and invoked his privilege against self-incrimination.

[6]The defendant has not made any particularized challenge to the trial judge's

findings that the police had probable cause to search the passenger compartment and trunk of the Cadillac, we turn to the more substantial question presented on the defendant's appeal, that is, whether the Commonwealth met its burden of proving that the warrantless search of the trunk was justified by a recognized exception to State and Federal warrant requirements. The Commonwealth argues that the warrantless search falls within the so-called "automobile exception" to the warrant requirement. As explained in *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 53 (1974), quoting from *Chambers* v. *Maroney*, 399 U.S. 42, 51 (1970), the rationale behind this exception is that a "car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." See *Commonwealth* v. *Markou*, 391 Mass. 27, 29-31 (1984); *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990); *Commonwealth* v. *White*, 422 Mass. 487, 497-498 (1996); *Commonwealth* v. *Motta*, 424 Mass. 117, 122-124 (1997); *Commonwealth* v. *Gajka*, 425 Mass. 751, 752 (1997); *Commonwealth* v. *Vazquez*, 426 Mass. 99, 104 (1997).

The trial judge made no finding of fact based upon Hakim's assertions that the Cadillac was inoperable. Rather, she stated that she "heard no evidence from the police that they had any information or any reason to believe that [the Cadillac] would not have operated." However, she did conclude that, because the Cadillac was blocked by another vehicle, it was "unlikely" that Hakim or the defendant "could have quickly taken th[e] car and driven it away."

It does not, however, follow from the conclusion that the Cadillac could not be quickly moved from the driveway, that

findings in respect to the confidential informant's reliability or veracity. Rather, he simply concludes his argument on the claim that a warrant should have been obtained by paraphrasing the holding in *Commonwealth* v. *Borges*, 395 Mass. 788, 794-795 (1985). We construe this fleeting reference to *Borges* to be an assertion that the information supplied by the informant should not be included in any determination concerning the sufficiency of probable cause for his arrest and the search of the trunk. *Borges* is, however, inapposite, because there the police acted upon uncorroborated information from a pedestrian with whom they had no previous contact. In the present case, the police acted upon corroborated information from an informant who, for about seven or eight months, had been providing them with information leading to arrests and convictions on drug and weapons charges. Other than this vague reference to *Borges*, the defendant does not question the trial judge's findings in respect to the accuracy or sufficiency of the informant's corroborated information. He has, therefore, acquiesced in the findings concerning the existence of sufficient probable cause to arrest and to search.

exigent circumstances excusing the need for a warrant did not otherwise exist. "To qualify as exigent circumstances, the situation facing the officers at the time they commenced their warrantless search must be such that it was impracticable for them to get a warrant." *Commonwealth* v. *Cast*, 407 Mass. at 904.[7] Further, "whether exigent circumstances exist depends upon an evaluation of all the circumstances as they appear to the police at the time." *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 233 (1983).

There are a number of factors to consider in determining whether the particular circumstances were sufficiently "exigent" to justify a warrantless search and seizure. "These factors include the mobility of the automobile, . . . the defendant's knowledge that the police had been observing his activities, . . . and the likelihood that evidence will be removed or destroyed." *Commonwealth* v. *Sergienko*, 399 Mass. 291, 296 (1987) (citations omitted). Further, the "police should consider how long it would take to obtain a warrant." *Ibid.*, quoting from *Commonwealth* v. *Pietrass*, 392 Mass. 892, 899 (1984). And, "[i]t is also significant that the evidence sought was narcotics, which are 'peculiarly vulnerable to speedy and easily accomplished destruction; and that very vulnerability is something that police officers in the course of their narcotics enforcement duties must be unfailingly conscious of and repeatedly speculate about if they are to function effectively to protect the public interest.' " *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. at 235, quoting from *United States* v. *Johnson*, 561 F.2d 832, 844 (D.C. Cir.), cert. denied, 432 U.S. 907 (1977).

It was evening when Kenney received information from the informant and began his surveillance of the premises with support from other officers. Kenney could see that the Cadillac was parked in the driveway of the premises. Even if the police did not know at the time of their actions that Hakim's family resided on the premises, they reasonably could infer that the Cadillac was parked in the driveway with the permission of the owner. Based upon the commotion caused during the pursuit of the

---

[7]There is no need to discuss the defendant's suggestion that the police should have applied for a warrant *before* they began their surveillance of the premises. See *Commonwealth* v. *King*, 35 Mass. App. Ct. 221, 226 (1993) (police entitled to wait until "last piece of probable cause had fallen into place"). Contrast *Commonwealth* v. *Forde*, 367 Mass. 798, 801 (1975) ("as of at least a week before the raid the police had information sufficient to establish probable cause" but did not seek a warrant).

man who had just purchased drugs from the suspects, the police could believe, reasonably, that the neighbors were not favorably disposed toward them and that the suspects had been alerted to their presence.

These circumstances raise the question of whether the officers, upon the arrest of Hakim and the defendant, could seize the drugs from the trunk without first obtaining a warrant or whether they were required to keep the Cadillac under guard in the driveway until a warrant was applied for and obtained.[8] See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 357 (1978), where the court noted that "[w]hile the feasibility of posting guard has mitigated the exigency of the moment where a search of a dwelling was involved (*Commonwealth* v. *Hall*, 366 Mass. 790, 803 [1975]), the exigency requirement generally has not been as rigorously applied to cars." Accord *Commonwealth* v. *A Juvenile (No. 2)*, 411 Mass. 157, 165 (1991).

In our view, any notion that the police could have obtained a search warrant subsequent to their arrest of Hakim and the defendant but prior to their seizure of the drugs from the trunk of the Cadillac is, at best, "abstract." *Commonwealth* v. *Ortiz*, 376 Mass. at 357 ("fact that, in the abstract, less intrusive means might have been used does not, by itself, render the search unreasonable"). Standing guard over the car until a warrant could be obtained represents "interference with property rights as well as an unnecessary use of law enforcement personnel." *United States* v. *Evans*, 481 F.2d 990, 994 (9th Cir. 1973). Moreover, whatever the extent of the defendant's expectation of privacy in the Cadillac, the fact remains that he openly transacted drug sales from the trunk of that car in open view of everyone in the area. See *Commonwealth* v. *Simmons*, 392 Mass. 45, 50, cert. denied, 469 U.S. 861 (1984) ("factor to be weighed in the expectation of privacy calculus is whether the defendant 'took normal precautions to maintain his privacy' " [citation omitted]). See also *Commonwealth* v. *Ortiz*, 376 Mass. at 357 n.7 (commenting upon "diminished expectation of privacy as an underlying factor in the [*Carroll* v. *United States*, 267 U.S. 132 (1925), and *Chambers* v. *Maroney*, 399 U.S. 42 (1970),] line of decisions").

---

[8]We do not consider whether the police should have arranged to have the Cadillac towed to the police station and held while a warrant was sought. That option would have involved first removing the Buick blocking the Cadillac. Such action would have been impractical, if not an unreasonable intrusion upon the privacy interests of the unknown owner of that car.

In sum and as held in *Commonwealth* v. *Bakoian*, 412 Mass. 295, 304 (1992):

> "Where the police have probable cause to believe that a vehicle contains contraband, the feasibility of posting a police guard so that a warrant may be obtained before a search is conducted is not a heavily weighted factor militating against the finding of exigent circumstances. . . . The guarding and immobilization of the vehicle in the interim is, in effect, a 'seizure' and constitutes the precise interference with the defendant's privacy rights that the warrant requirement serves to protect. . . . In attempting to strike a balance between a defendant's privacy interests and the interests of the police in situations such as this, we have followed the Supreme Court's initiative and granted police 'leeway . . . to conduct immediate searches of automobiles in lieu of holding them pending a warrant,' based on the diminished expectation of privacy generally attaching to automobiles." (Citations omitted.)

We conclude that the circumstances with which the police were presented were sufficiently exigent to allow them to proceed without a warrant.

3. *Statement against penal interest.* Although Hakim testified at the suppression hearing, he declined to testify at trial. See note 5, *supra.* During cross-examination of Kenney, defense counsel asked whether it was true that Hakim, while under arrest, said, "The cocaine is mine." The trial judge excluded the answer, and the claim on appeal is that the statement was admissible as a declaration against penal interest. See *Commonwealth* v. *Galloway*, 404 Mass. 204 (1989). Assuming without deciding that it was error to exclude the statement, we conclude that any error was harmless. As discussed in part 5 of this opinion, *infra*, there was more than sufficient evidence of the defendant's participation in the drug venture irrespective of any assertion that the cocaine belonged to Hakim.

4. *Expert opinion.* Sergeant Philip Tarpey related to the jury that he searched the defendant incident to his arrest and removed a beeper from the waistband of his pants. The beeper was received in evidence. Tarpey was allowed to testify that, in his training and experience as a narcotics officer, he had arrested well over one hundred individuals for drug offenses who had

been carrying beepers, that beepers were "predomin[ant] tool[s] of the trade," and that "[p]eople who were engaged in distribution of narcotics use the beeper and beeper system to facilitate communication between themselves and people who wish to buy narcotics." On cross-examination, Tarpey readily acknowledged that people carry beepers for any number of reasons unrelated to criminal activity.

The defendant argues that it was error to admit in evidence Tarpey's testimony because it was inherently prejudicial "profile testimony." See *Commonwealth* v. *Day*, 409 Mass. 719, 723 (1991) ("[t]estimony regarding a criminal profile is nothing more than an expert's opinion as to certain characteristics which are common to some or most of the individuals who commit particular crimes"). We do not agree. Tarpey's testimony "was more akin to a description of the modus operandi of street level dealers than a 'profile' of a drug dealer." *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 669 (1992), *S.C.*, 416 Mass. 1001 (1993). See *Commonwealth* v. *Frias*, *ante* 293, 296-297 (1999), and cases therein cited. Contrast *Commonwealth* v. *Jackson*, 45 Mass. App. Ct. 666, 671 (1998) (officer's expert opinion that drug buyers commonly refuse to identify their supplier was inadmissible description of characteristic of drug buyers rather than explanation of modus operandi employed in transacting drug sales).

5. *Sufficiency of the evidence.* It is the defendant's position that the evidence was insufficient to put the case to the jury on the theory that he was either a principal or a joint venturer with Hakim. He claims that, at best, the evidence showed that he was an innocent bystander. This claim warrants no lengthy discussion. Kenney related that he saw the defendant and Hakim speak with the buyer. The three men then went to the trunk of the car. It was the defendant who reached into the trunk and brought out the bag from which the drugs and a scale were removed. Taking all the evidence, which we have previously set out in some detail, in a light most favorable to the Commonwealth, we conclude that it was sufficient to show that the defendant was more than an innocent bystander, that he constructively possessed the drugs and actively participated in the drug transaction. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 648-649 (1997).

6. *The* Tuey-Rodriquez *charge.* After deliberating for a little over an hour, the jury sent two questions to the trial judge:

could they see a police report never introduced in evidence, and, if convicted, what sentence would the defendant receive. After receiving appropriate responses to the questions, the jury resumed their deliberations. After about thirty minutes, they informed the trial judge: "Our decision is undecided and we are split, seven and five. All of us are strong in our convictions and stand firm." The trial judge then instructed the jury consistent with *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), as modified by *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix A). The defendant did not object to the instruction. The jury deliberated another forty-five minutes and then advised the trial judge that they would like to retire and resume their deliberations the next day.

About thirty minutes into their deliberations the following morning, the jury requested further instructions on joint venture and the elements of the crime. The trial judge delivered the requested instructions, and the jury returned to their deliberations. They reached their verdict one hour and forty-five minutes later. The defendant now claims that the *Tuey-Rodriquez* charge was prematurely given and was coercive to the degree that reversal of his conviction is required.

A trial judge has discretion in determining when to give a *Tuey-Rodriquez* charge. Here the trial judge stated that the jury's announcement that they were split, strong in their convictions, and standing firm, warranted the charge. Compare *Commonwealth* v. *Haley*, 413 Mass. 770, 779 (1992) (fact that the charge was given after jury simply asked a question about premeditation was insufficient basis for granting new trial). That the jury thereafter engaged in thorough deliberations is apparent from their request that they be re-instructed on joint venture and the elements of the crime. We see nothing in the circumstances presented that would lead us to conclude that the charge was so premature and coercive as to give rise to a substantial risk of a miscarriage of justice.

7. *Ineffective assistance of counsel.* Not one of the defendant's allegations of ineffective assistance of counsel is meritorious or adequately argued. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

*Judgment affirmed.*