## COMMONWEALTH *vs.* RICHARD AVILES.

No. 01-P-1441.

Essex. December 16, 2002. - July 2, 2003.

Present: CYPHER, KANTROWITZ, & COWIN, JJ.

*Rape. Indecent Assault and Battery. Deoxyribonucleic Acid. Search and Seizure,* Consent. *Constitutional Law,* Search and seizure, Self-incrimination, Burden of proof. *Practice, Criminal,* Motion to suppress, Assistance of counsel, Argument by prosecutor, Comment by prosecutor, Presumptions and burden of proof. *Evidence,* Medical record, Hospital record.

In a criminal action, the judge properly denied a motion to suppress test results acquired from an item that the defendant's wife produced and gave to the police to take from the defendant's home, where evidence that the police lawfully obtained could be subjected to scientific testing for genetic material, and nothing in the case law limited the consent of the defendant's wife, who had common authority over the item, to exclude authorization for testing for genetic material. [462-464]

At the trial of indictments alleging rape of a child under sixteen and indecent assault and battery, the judge properly admitted certain portions of the victim's hospital records over the defendant's objection, where the notations in the records contained the kind of information upon which hospital personnel would rely in order to make a diagnosis, and the remarks contained therein were easily understood as allegations of the victim and not as statements of fact by the treating medical personnel; moreover, defense counsel was not ineffective in failing to object to other portions of the records, where counsel used the information in the records to illustrate inconsistencies in the victim's testimony and previous statements. [464-465]

At a criminal trial, the prosecutor's closing argument did not contain a comment that violated the defendant's right not to testify against himself, where it was unlikely that the jury understood the comment to be anything more than a comment on the implausibility of the defense, and where, even if the statement was error, when examined in the context of the entire trial, the statement was not prejudicial [465-466]; likewise, any error arising from a comment by the prosecutor that allegedly shifted the burden of proof to the defendant did not prejudice the defendant, where the judge gave an instruction immediately after the comment was made, as well as a thorough final charge on the point [466-467]; finally, while another comment made by the prosecutor was questionable because of its potential to elicit sympathy for the victim and to suggest some duty on the part of the

jury to make the victim feel better, the jury likely considered it to be hyperbole or a rhetorical flourish, and given the judge's instruction not to base the verdict on sympathy or emotion, it was unlikely that the comment prejudiced the defendant [467-468].

The evidence at the trial of indictments alleging rape of a child under sixteen and indecent assault and battery was sufficient, when viewed in the light most favorable to the Commonwealth, to permit the jurors to find, beyond a reasonable doubt, that the defendant had touched the victim's vagina, vulva, or labia with his fingers. [468]

INDICTMENTS found and returned in the Superior Court Department on January 27, 1999.

A pretrial motion to suppress evidence was heard by *Richard E. Welch, III, J.,* and the cases were tried before him.

*Richard J. Fallon* for the defendant.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. A Superior Court jury convicted the defendant, Richard Aviles, of four counts of rape of a child under sixteen, in violation of G. L. c. 265, § 23, and one count of indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B. The defendant appeals, claiming error in (1) the denial of his motion to suppress evidence; (2) the admission of a sanitized version of the victim's medical records; (3) the denial of his motion for a required finding of not guilty on one of the counts of rape; and (4) the prosecutor's closing argument.

1. *Factual background.* The jury could have found the following facts. The defendant, a police officer, lived with his wife and his wife's daughter, Debbie.[1] The defendant began to sexually abuse Debbie in the summer of 1997, when she was twelve.

The defendant had sex with Debbie before or after school, and sometimes twice a day, up to four times a week. Each time, the defendant would ejaculate on her stomach and then wipe it off with either a towel or his undershirt. The defendant had tried to put his penis in her mouth, but she would clench her teeth. The defendant touched her vaginal area at least eight times with his fingers. Debbie testified that she had not had sex with anyone

---

[1]The child's name is a pseudonym.

other than the defendant. Debbie kept the defendant's conduct a secret because she was afraid of breaking up her mother's marriage and she thought that no one would believe her instead of a police officer. She was also afraid of the defendant, who kept a gun in the house.[2]

Debbie testified that on Monday, January 11, 1999, she was menstruating and felt sick. She went to her mother's room to use the telephone because she was not going to go to school. The defendant was watching television. He pushed Debbie onto the bed, raped her, and ejaculated on her stomach. He wiped off his semen with his undershirt and threw it in the laundry hamper in the bathroom.

Concerned because she had noticed changes in Debbie's behavior, Debbie's mother sought family counseling from their pastor. On Wednesday, January 13, 1999, the pastor met privately with Debbie. Debbie appeared frightened and reluctant to talk because "it would hurt her mother, and somebody would lose their job." Finally, crying and gasping, Debbie disclosed the defendant's conduct, stating that the defendant had intercourse with her ten to twelve times, and as recently as two days earlier on Monday, January 11, 1999.

A gynecological examination revealed that Debbie had "remnant hymenal tissue" consistent with repeated penetration by an adult penis.

State police Trooper Downsbrough conducted an investigation on Thursday, January 14, 1999. Debbie's mother signed a consent form, permitting Trooper Downsbrough to search her house. Trooper Downsbrough removed Debbie's bedding and dirty clothes from her hamper. Debbie's mother gave Trooper Downsbrough her own hamper, which included three T-shirts belonging to the defendant, along with a few other items. The mother testified that she had done the laundry five days earlier.

Debbie, her mother, and the defendant submitted blood

---

[2]In the fall of 1998, Debbie fought and argued with the defendant. In December of 1998, the defendant struck Debbie after she swore at him. Debbie ran away and stayed at her friend Derek's house. The defendant arrived in uniform and locked Debbie in the back of his cruiser. Debbie also testified that the defendant had struck her on one other occasion because she had attempted to go to school without having sex with him.

samples. DNA testing on the defendant's T-shirt confirmed the presence of the defendant's seminal fluid, and human blood on the sleeve and neckband. Debbie's mother was excluded by the testing as a possible source of the blood on the T-shirt, but the defendant and Debbie could not be excluded as a source of the blood.

In addition to the pastor, Debbie's best friend[3] and Trooper Downsbrough testified as fresh complaint witnesses.

The defendant testified on his own behalf and denied having any sexual contact with Debbie. The defendant claimed that Debbie often wore his undershirts and that he sometimes would puncture pimples on her back, leaving pus and blood on his shirts. The defendant could not explain how his sperm got on the undershirt. The defense also endeavored to show that Debbie was fabricating her claims because of the defendant's role in disciplining her at home.

2. *Discussion.* a. *The motion to suppress the DNA test results on the defendant's T-shirt.* When reviewing a judge's action on a motion to suppress, we accept the subsidiary findings of fact absent clear error. "A judge's legal conclusion, however 'is a matter for review . . . particularly where the conclusion is of constitutional dimensions.' *Commonwealth* v. *Jones,* 375 Mass. 349, 354 (1978)." *Commonwealth* v. *Evans,* 436 Mass. 369, 372 (2002). *Commonwealth* v. *Rupp,* 57 Mass. App. Ct. 377, 381 (2003).

The motion judge found that the defendant's wife consented to the search of her home and that she produced a laundry hamper containing the defendant's soiled clothing and towels upon learning of Debbie's allegation that the defendant had twice recently ejaculated on her stomach and had wiped off his semen with a towel on one occasion and with a white T-shirt on the other. The judge found that it was entirely the defendant's wife's idea to show the police clothing from this hamper. The judge concluded that because the wife turned the defendant's

---

[3]Debbie's best friend testified that Debbie would have to go inside the house immediately after school and would not come outside for thirty to forty-five minutes. The friend would see the defendant leave the house at the same time. She also stated that Debbie had confided in her about the defendant's actions and had made her promise that she would not say anything.

clothing over to the police completely of her own volition, there was no State action and therefore no search or seizure within the meaning of art. 14 of the Declaration of Rights of the Massachusetts Constitution or of the Fourth Amendment to the United States Constitution. The judge also concluded that, even if there had been State action, the police acted validly without a warrant, based on the wife's consent.

The defendant does not challenge the judge's subsidiary findings of fact. The defendant admits that his wife had the authority to consent to the search of her home and to the seizure of the defendant's T-shirt. See *United States* v. *Matlock*, 415 U.S. 164, 169-171 (1974); *Commonwealth* v. *Martin*, 358 Mass. 282, 288-290 (1970); *Commonwealth* v. *Deeran*, 364 Mass. 193, 195 (1973). The defendant also does not challenge the ability of the police to test the T-shirt for seminal fluid.[4] Instead, he argues that his wife's consent cannot be extended to authorize the testing of the T-shirt for genetic material (and that another warrant was thus required) because, in short, a person cannot consent to the testing of someone else's genetic material.[5] For support, the defendant relies on *Walter* v. *United States*, 447 U.S. 649, 651-654 (1980), where the Supreme Court held that Federal agents acted unconstitutionally when, without a warrant, they projected obscene films that had been turned over to them by a private third party who had opened the sealed film cartons. We reject the defendant's argument. First, *Walter* was grounded largely in First Amendment protections, which are not implicated in this case. *Id.* at 655. See *Commonwealth* v. *Varney*, 391 Mass. 34, 41 (1984) (discussing *Walter* and concluding that scientific examination by government officials of lawfully obtained white powder was permissible as it did not endanger any "countervailing interest in free expression"). Second, the Supreme Judicial Court has concluded that where the police have lawfully obtained evidence, it may be subjected to scientific testing. See *Commonwealth* v. *Robles*, 423 Mass. 62, 65 n.8, 66 n.9 (1996). Cf. *Commonwealth* v. *Campbell*, 352 Mass. 387, 402

[4]We note that a critical fact about the semen stain on the defendant's T-shirt is that Debbie knew it would be there.

[5]We observe that the DNA testing here was limited to identification purposes.

(1967) (grant of power in G. L. c. 276, § 3, as amended through St. 1964, c. 557, § 4, that articles seized pursuant to warrant be kept "so long as necessary to permit them to be produced or used as evidence on any trial" also authorizes introduction of evidence obtained as result of tests and experiments on lawfully seized items). Finally, there is nothing in the case law that limits, in the manner suggested by the defendant, the consent of one who has common authority over an item.

b. *Medical records.* Portions of Debbie's hospital records were admitted over the defendant's objection and portions were admitted without objection. The defendant argues that the trial court should not have admitted the portions to which counsel objected, and that counsel was ineffective for failing to object to admission of the other portions of the medical records. The defendant claims that because the records addressed liability, the records were not admissible under G. L. c. 233, § 79,[6] which permits the admission of hospital records concerning treatment and medical history.

The records objected to by defense counsel at trial contained the following narrative by a treating nurse: "last Monday 1/11/99 . . . He held her shoulders & penetrated her vagina with his penis — He then withdrew his penis & ejaculated on her abdomen. . . . [Debbie] further reports similar assaults repeatedly . . . for the past 1-2 years."[7]

The notations included in the records contained the kind of information upon which hospital personnel would rely in order to make a diagnosis. See *Commonwealth* v. *Perry*, 385 Mass. 639, 642 (1982) ("If the subject matter of an entry falls within those areas which, under hospital practices, are regarded as relevant to diagnosis or treatment, it is within the statute"). The narrative does not contain quotation marks or the word "alleged"; however, the remarks are easily understood as allegations of Debbie and not as statements of fact by the treating

---

[6]General Laws c. 233, § 79, provides in relevant part: "Records kept by hospitals . . . may be admitted by the court, in its discretion, as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

[7]The record in question was otherwise redacted considerably.

medical personnel. In any event, the defendant suffered no prejudice, as the allegations in the hospital record "added nothing to other evidence presented." *Commonwealth* v. *Gogan*, 389 Mass. 255, 264 (1983).

The records not objected to by defense counsel contained the following references: "14 yo reports [] 18 mo. intermittent sexual assault by step father — Vaginal Penetration & attempted anal penetration in past — Last assault 24 [hours] ago. Denies oral penetration, physical beating. Confided in pastor who notified M.D. Pt. denies other sexual partners. Has regular menses. Today is 1st day of menses." The defendant admits that counsel intentionally did not object and claims now that the omission constituted ineffective assistance of counsel.

Defense counsel used the information in the hospital record to illustrate inconsistencies in Debbie's testimony and previous statements.[8] Defense counsel's decision was a reasonable tactical choice. See *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 221 (1997) (counsel made reasonable tactical choice not to challenge fresh complaint evidence, but instead marshaled inconsistencies between out-of-court statements and trial testimony).

c. *Closing argument.* The defendant argues that the prosecutor's closing argument contained three instances of error, which alone or in combination amounted to reversible prosecutorial misconduct. We examine each in turn.

1. *Comment on the defendant's right not to be compelled to be a witness against himself.* In closing argument, defense counsel referred to the defendant's explanation that Debbie's blood was on his T-shirt because he sometimes popped the acne on her back and wiped the blood with his T-shirts. The prosecutor responded in closing: "What about this other explanation? And just when you think you've heard everything, ladies and gentlemen, now we have this child popping — not her popping her own, but the defendant popping her shoulder acne and then using his own undershirt to wipe up the blood and pus. Well, again, what does common sense tell you? *They've got to come*

---

[8]For example, whether there was attempted anal penetration, when the last incident had occurred, whether there was oral penetration, and when Debbie was menstruating.

*up with something, I suppose"* (emphasis added). The defendant objected and the judge immediately instructed the jury that the defendant does not have the burden of proof.

The defendant argues that this comment violated his right under the Fifth Amendment to the United States Constitution not to be compelled to testify against himself. In the context of the entire argument, it is unlikely that the jury understood the comment to be anything more than a comment on the implausibility of the defense. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 272 (1982) (defense tactics are not immune from comment); *Commonwealth* v. *Feroli*, 407 Mass. 405, 409 (1990) (prosecutor is entitled to emphasize strong points of government's case and weak points of defendant's case). Finally, even if the statement was error, when examined in the context of the opening statements, the closing arguments, the evidence at trial, and the judge's instructions to the jury, it was not prejudicial. See *Commonwealth* v. *Clary*, 388 Mass. 583, 590-591 (1983); *Commonwealth* v. *Kozec*, 399 Mass. 514, 518-519 (1987); *Commonwealth* v. *Christian*, 430 Mass. 552, 564-566 (2000).

2. *The burden of proof.* Debbie testified that she had never had sexual intercourse with anyone other than the defendant. During closing argument, defense counsel attempted to use Debbie's apparent interest in sex with boys her own age to explain the medical evidence concerning the condition of her hymen as well as to attack her veracity: "You know, look at the credibility of [Debbie] about that sex. Look at the list of her boyfriends, that she acknowledges. Look at the sex notes, the explicit sex notes. Look at sleeping in Derek Sampson's bed." In his closing, the prosecutor responded by reminding the jury that Debbie had testified that she had never had sex with anyone other than the defendant and by arguing,

> "Why should you believe her? Well, as you heard [defense counsel] ask, they seem to have the name of every, single boyfriend she ever had. And judging from what you heard, and the tenor and the tone of this defense, and the attack on that child, and painting her as a bad kid and a bad girl, *don't you think, ladies and gentlemen, that if there was anything out there, you would have heard it?"* (Emphasis added.)

The judge overruled the defendant's objection but immediately instructed the jury that the defendant did not have the burden of proof, though the prosecution could comment on the argument of defense counsel and the defense evidence.

The defendant argues that this comment improperly shifted the burden of proof to the defendant. The Commonwealth argues that the comment was merely an attempt to argue that Debbie was credible, that the defendant's attack on her credibility had failed, and that he was entitled to point out deficiencies in the defendant's proof. We conclude that any error did not prejudice the defendant. The judge's prompt instruction, as well as a thorough final charge on the point, cured any possible prejudice. See *Commonwealth* v. *Girouard*, 436 Mass. 657, 669 (2002).

3. *Plea for sympathy.* The defendant claims that the prosecutor improperly appealed to the jury for sympathy for Debbie when he said:

> "Ladies and gentlemen, last January the 13th, [Debbie] told her minister, her pastor, 'I don't want people thinking I'm a bad girl anymore.'

> "Ladies and gentlemen, you have the opportunity, here, to tell her that she is not, that she was not the bad girl that this defendant wants you to believe she was."

The judge overruled defense counsel's objection and the prosecutor continued:

> "The evidence is there for you to say that what was bad, what was shameful, what was criminal, was this man's conduct — this man's conduct in betraying his wife, his family, and a little girl that trusted him; this man's conduct in raping her and molesting her, day after day.

> "I urge you, ladies and gentlemen, look at the hard evidence, here, and return the only true verdict based on that evidence.

> "Find this defendant, Richard Aviles, guilty of all the indictments."

The Commonwealth argues that the comment constituted a request to the jury to reject the defense strategy to paint Debbie

as a bad girl and that the prosecutor did not appeal to the juror's emotions or fears and did not ask them to avenge her suffering.

We think the comment was questionable because of its potential to elicit sympathy for Debbie and to suggest some duty on the part of the jury to make her feel better. However, the jury likely considered it to be hyperbole or a rhetorical flourish. See *Commonwealth* v. *Andrade,* 422 Mass. 236, 244 n.9 (1996) (jury has sufficient measure of sophistication to screen out a degree of hyperbole). See also *Commonwealth* v. *Marquetty,* 416 Mass. 445, 451 (1993).

Additionally, the judge instructed the jury not to base the verdict on sympathy or emotion. In the context of the entire trial, including the opening and closing arguments, the evidence, and the judge's instructions, it is unlikely that the comment prejudiced the defendant. See *Commonwealth* v. *Kozec,* 399 Mass. at 518.

d. *Sufficiency of the evidence.* The defendant argues that there was insufficient evidence of digital penetration to convict on the indictment alleging digital rape. The prosecutor asked Debbie whether the defendant had ever touched her "vaginal area with anything else, other than his penis," and Debbie answered that he had touched her with his fingers eight to ten times. The defendant claims that "vaginal area" was too vague and does not mean "vagina." Understandably, defense counsel did not raise this argument below. The argument is without merit. In the light most favorable to the Commonwealth, and in the context of the entire direct examination, the jurors could have found, beyond a reasonable doubt, that the defendant touched Debbie's vagina, vulva, or labia. See *Commonwealth* v. *Donlan,* 436 Mass. 329, 336 (2002).

*Judgments affirmed.*